Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Welch and Justice McKinney. The first case this morning is 5-220-206 Adams, etc. et al. v. Chicago Title Insurance Company et al. Arguing for the appellant is Kevin Cushing. Arguing for the appellee is Courtney Cox. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. And good morning to our non-video participants who are sitting out there listening. Are you ready to proceed, Mr. Cushing? I am, Your Honor. All right. You may do so when ready. May it please the Court, Kevin Cushing, today representing Chicago Title Insurance Company and Walter Adams. We are here today in a case that involves the extraction of natural gas from property by one co-tenant without the other co-tenant's permission. Years ago, the O'Malley Trust leased property known as the Prather Farm to a company called Putnam Energy, which began drilling for natural gas. It did so without the permission of co-tenants Adams and Luby, two individuals who had retained a 50% interest in the mineral estate in 1984. The lawsuit was originally a quiet title action between the O'Malley Trust and Adams and Luby concerning the ownership of the mineral interest. The trial court found that the O'Malley Trust was a 50% mineral interest co-tenant with Adams and Luby. And after that, Adams and Luby brought the claims that are at issue here. In addition to bringing an action for an accounting, which is what all co-tenants prior to Adams and Luby have done involving oil and gas in this state, Adams and Luby decided to bring a case for tort claims, including punitive damages, against every party remotely involved in the case. That includes Chicago Title and Walt Adams. Chicago Title's involvement is simply road to title insurance policy, ensuring that Mr. O'Malley's trust owned the farm, real estate itself, as well as 100% of the mineral interest. Walter Adams' involvement was he wrote a cover letter that said that the O'Malley Trust had merchantable title to the minerals. They didn't receive any money from the extraction of the minerals, but yet they're brought into this case with tort claims for conspiracy as well as slander of title. We're not here today to discuss the policy or the cover letter. What we are here today to determine whether or not Adams and Luby have any rights other than to an accounting. We believe the only rights of Adams and Luby in this circumstance is for an accounting, which allows for the deduction of the cost for extracting the oil and gas from the ground. So in this case, Adams and Luby, in their brief, they're saying that there is $3.6 million worth of minerals removed. They have a 50% interest in those minerals, which would make it about $1.8 million. Our belief is they get the $1.8 million less 50% of the cost for extracting the minerals. That's based upon case law in Illinois, as well as the Oil and Gas Rights Act. Adams and Luby instead are bringing a claim they want 100% of the value of the minerals plus punitive damages. That has never been allowed in any case involving mineral interest with co-tenants in the state of Illinois. So we filed summary judgment. That summary judgment was denied by the trial judge. The trial judge then decided to certify the three questions that were presented here today to you. Those three questions will determine the rights of the parties in this case and substantially advance the merits. The first question is whether or not Illinois law provides a tenant in common owning at least half of the mineral interest in land with an unfettered right to drill for oil and gas without co-tenant permission. We believe the law is clear if you put together the various points on the map that the co-tenant has the unfettered right if it owns 50% and oil and gas is involved. We have various things that are involved here that are unique as far as mining goes. We have co-tenancy, we have oil and gas, and we also have the rights of trespassers. In the cases cited by Adams and Luby, they rely on a trespasser case, which is the Murray case, and it involves coal. That case from 1873 held that one co-tenant couldn't give a lessee or anyone the right to mine coal. Since that time, the law of co-tenancy has evolved with respect to how mining by co-tenants without permission involving a mineral estate in oil and gas is treated, and so has a law of trespass in general. I will discuss the reasons for this in a moment, but the court should realize that since the turn of the 20th century, oil and gas have been treated differently than any other minerals in the ground. As the court can well tell, there's a separate act, the Oil and Gas Rights Act, that was passed in the late 1930s. The law in other states has evolved as well, and Illinois has looked to those states to determine the rights of co-tenants with respect to oil and gas. We believe that a look at the case law in chronological order that we have cited in our brief will help this court understand the evolution of the law. In the first case we would like to point the court's attention to is the Guffey v. Smith case. That concerned land in Crawford County, that concerned oil and gas, and there was a claim for trespassing. For the first time, the U.S. Supreme Court looked at these facts and determined that rights of the mineral interest holder with respect to a trespasser were going to be different when it was an innocent trespasser versus whether it was a willful trespasser. In this case, the Supreme Court found the trespasser was an innocent trespasser, and when that trespasser had to account to the mineral rights holder, it was allowed to deduct the cost in mining from the proceeds from the sale of the oil and gas. That meant that there was a net recovery. I want to point out to the court at this point in time, the Oil and Gas Rights Act is a net recovery. So 1915 starts the process for net recovery. 1917, the Conklin case, which is an Illinois Supreme Court case, says a co-tenant cannot be a trespasser on property owned in co-tenancy. So now the law of trespass has changed in Illinois with respect to trespassing co-tenancy. The next case is a case that is cited frequently in Illinois, at least in the 1930s and the 1940s, and that is the New Domain v. McKinney case. It's a Kentucky case, and I think that case sets forth the rationale for why oil and gas are different. And it says, in cases of a willful trespasser, the rule seems to be well settled, as seen from the other authorities, that plaintiffs is entitled to recover in a suit for an accounting the value of the minerals without deducting any expenses incurred in mining it. But we do not understand that this stern rule should be applied in cases where a co-tenant operates the mine with the knowledge of his co-tenant's interests. Especially should this rule not be applied against a co-tenant where the mineral involved is of a fugacious nature and liable to be exhausted by adjacent operators. That's the McKinney case, Judge, and that one's going to be cited several times by Illinois courts. We go next to the case of Fife v. Fife, which was an Illinois case. It's a co-tenancy case, and the Illinois Supreme Court found for the first time that an oil and gas lease entered into by some, but not all the co-tenants, is presumed to have been made for the benefit of all the co-tenants. That was new law by that case. Next, that same case went to the Court of Appeals, and this is the Court of Appeals case is a 1937 Fife case that is cited repeatedly by Adams and Luby. But I think Adams and Luby missed the point because the court in the Fife case at the appellate court level says that in view of the fact that appellant was in possession in good faith and under a lease, which the Supreme Court has said must be presumed to have been made for the benefit of all, it should not now be held to account as a willful trespasser. It's cited to the McKinney case that I just read for you, and it said in announcing the measure of damages as between co-tenants, that case is equally applicable to the facts in that case. And for the first time, the Illinois appellate court allowed for the deduction of the cost of production in a co-tenancy manner. So that was the common law. This is before the statute, the Oil and Gas Rights Act. Two years later, the Oil and Gas Rights Act is passed, and it allows someone that owns 50% or more of the mineral interests to mine for the minerals with court approval. But it doesn't require it because the common law was the same as the statutory law. So now we have the statutory law and the common law lined up. And what we have, Judge, is the Gillick case that is another Illinois Supreme Court case that talks about the nature of oil and gas. And it says that the owner-in-fee of the land owns to the center of the earth, but he does not own a specific cubic foot of water, oil, or gas under the earth until he reduces it to his possession. So that means that the oil and gas in the ground aren't owned by anybody. And what it does is the person that owns it is the person that takes it out of the ground. So Adams and Luby never owned any oil and gas in the ground, and they can't own it when it's out of the ground because they didn't participate in it being removed. We next get to the Pure Oil v. Burns case, which is another Illinois Supreme Court case. And it held that the stern rule of liability of a co-tenant who commits waste or damage to the common property has been relaxed where the profit taken from the land is of a fugacious nature and liable to be exhausted. In acknowledging this was a law, it didn't rely on the statute. It relied on Kentucky, Oklahoma, and Texas case law. That same year, two months later, in the Rudwald v. McBride case, the Illinois Supreme Court allowed two groups of co-tenants that had signed leases with different working interest holders. Each of those leases was enforced. In the beginning there was an injunction issued for the first leaseholder to prevent the second leaseholder from mining. The Rudwald case held both interests were applicable and dissolved the injunction. So what we have here, judges, is the ability for co-tenants to mine based upon the summary of the law. And I also want to talk about the Jader case, which is the Court of Appeals, Seventh Circuit. You'll see in the brief that Adams and Libby try to distinguish Conklin by saying that it's a surface rights case. The Jader case involved mining of coal. And in that case, two different entities had the right to mine the coal. And the court said that one of those entities could not, since they were treated as co-tenants, those co-tenants could not trespass against each other. So there is no claim of trespass, there is no claim for conversion, and the rights should be upheld for the unfettered right. The second question we presented is whether or not the Oil and Gas Rights Act is mandatory. Simply put, justices, everybody that's a party to this case could have brought a claim under the oil and gas rights case. The owner of 50% or more mining interest that wants to mine can bring a case. The lessee of the mining interest can bring a case. And so can the co-tenant that is not mining bring a case under the Oil and Gas Rights Act. We are saying that because of the fact that the statute requires a co-tenant with 50% or more interest, requires that they have a 50% or more interest, that's a requirement. The statute clearly says that that co-tenant may bring the action, but doesn't have to bring an action. And simply put, if the co-tenant with the 50% interest brings that action, the court shall grant them the right to mine. So in this case, we have a 50% co-tenant, it has the right to bring it under the statute, but since O'Malley owned the surface and 50% of the mineral interest, he didn't have to bring the claim. His lessee could go on the property and mine, no one was going to interfere with it. And therefore, he didn't have to follow the statute, he could follow the common law. And we do not believe that unilateral drilling of oil and gas by a co-tenant is a tort. Adams and Luby try to justify the tort by talking about the Joint Tenancy Act, but that requires a co-tenant to have exercised exclusive ownership, take away, destroy, lessen in value, or otherwise injure or abuse any property held in tenancy in common. The oil and gas in the ground are not held in common. We cite it to the cases, there's other cases in our brief, there's the Pickens v. Adams case, there's the Merbauer case. Those cases all stand for the proposition that the oil and gas in the ground are not owned by the mineral rights holder, they're owned by the owner of the surface, and they're only owned in proportion to what is captured. And finally, for why there's no tort claim here, we're going to cite the court to the Detloff v. Ziegler case, which was a willful trespasser case involving coal. The plaintiff in that case, the mineral rights holder, sued for trespass conversion and said he wanted the value of the minerals plus punitive damages. And the court said no, no punitive damages, even against a willful trespasser, because getting the value of the minerals is sufficient. I don't think we get to question three based upon what we believe the ruling should be for questions one and two, but I would like to point out that question three would follow the common law and anyone would have the right that was a co-tenant to mine, based upon the cases we cited. I would like to point out to the court the Chaparral case that's in our brief that says the sale of gas to a purchaser by a co-tenant without the consent of the other co-tenants is lawful and does not constitute trespass. And I'd also like to point out the Fife v. Thompson case where the courts held that the majority of the jurisdictions in this country where the question has been raised, a co-tenant of lands containing oil and gas is privileged to take oil and gas there from without the consent of the other co-tenants. Thank you, Your Honor. I see my time is up. Mr. Cushing, you'll have a few minutes after Mr. Cox's argument. Justice Welch, any questions? No questions. Justice McHaney? No questions. Okay, thank you, Mr. Cushing. Mr. Cox? Thank you, Your Honor. May it please the court, counsel? In its motion for summary judgment decision or motion, CTIC relied upon Fife v. Fife. It's a 1937 case. As support for this argument, they're now making to this court that one co-tenant has the unfettered right to take and remove the minerals without the consent of the other co-tenant. That was a stunning argument when I read it since Fife actually held the opposite. One co-tenant cannot remove and sell minerals without the consent of the other co-tenant. That principle goes all the way back to the case of Murray v. Haverty in 1873, a case that was based on the Illinois Joint Tenancy Act. The trial court in this case found that the statement by the court in Fife was the opposite of the assertion made by Chicago Title. The court found Chicago Title's statement was a misstatement of the law. Another misstatement of the law is found on page 8 of CTIC's brief, which says, Since 1937, Illinois jurisprudence has fit squarely within the majority jurisdictions affording a co-tenant the unfettered right to mine oil and gas from shared property. There's no citation for that statement, and there can't be because it's not a true statement. Even a modicum of research on this issue reveals that Illinois is not a majority jurisdiction. It is and has always been a minority jurisdiction. The Kentucky case that's talked about by Mr. Cushing, Kentucky is a majority state. A majority state says that you can do what Chicago Title says you can do. Illinois is a minority state. You cannot do what Mr. Cushing says you can do, which is just take it without consent. CTIC spent a good deal of time arguing about the fugacious nature of oil and gas, arguing that they can't be owned while they're in the ground. And when they are removed from the ground and reduced to possession, then they can be owned. The problem with these arguments is they have nothing to do with this case. This case involves minerals that were actually removed from the ground, reduced to possession, and sold, all without the consent or knowledge of the co-tenants, Mrs. Adams and Mrs. Luby. The rule of capture that's discussed in the case says oil can't be owned until it's reduced possession. But in this case, the minerals have already been reduced to possession and are subject to being owned. Your Honors, the heart of this case is the Joint Tenancy Act, which since 1935 has provided that if any person shall assume and exercise exclusive ownership or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy or tenancy in common, the party agreed, which are my clients, shall have their civil action for the injury. In this case, there's no question that they removed and caused an injury to the mineral estate by removing it from the ground. And the argument made by Mr. Cushing here this morning that if you, once you get it out of the ground, it belongs to the O'Malley's is absolutely wrong. It belongs in equal parts to my clients and to Mr. O'Malley. It doesn't change ownership just because you remove it from the ground. This act, the Joint Tenancy Act applies to any jointly owned property. In this case, it just happens to be oil and gas. Simply put, the Joint Tenancy Act does not permit one co-tenant to remove and sell the oil and gas without the permission of the other co-tenants. And if a co-tenant violates the act, like the O'Malley's did in this case, they are subject to civil actions against them. Not just trespass and trover. Prior to 1935, the act only applied or allowed trespass and trover actions or conversion actions. But since 1935, it allows civil actions, which the trial court correctly found include more than just conversion and trespass actions. We are not limited to an action for accounting. We can bring any civil actions that are available. We have done so. They have been approved by the court, subjected to motions to dismiss and approved. They are not a part of this appeal. There are cases that are cited by Chicago title that they say stand for the proposition that one co-tenant can't commit trespass against another co-tenant. Every one of those cases pertains to the surface. In other words, I own 40 acres with co-tenancy with someone else. Both of us can go on the property, walk around on the property, use the property for surface purposes. The problem is, in those cases, you are not committing waste on the property. And that's what violates the Joint Tenancy Act. And that's because the removal of the minerals is a commission of waste. They're taking away a value from the property. All of those cases cited by Chicago title are simply about walking around on the property. In one case, they just wanted to do an inventory. Let me talk about the Jader case. In that case, Judge Beatty, a federal judge, he looked at a case where there were not co-tenants. And there was a question of whether or not there had been a trespass or conversion. And he analogized it to cases where the co-tenants were involved. They weren't co-tenants, but he analogized it to that. And he said, you can't commit trespass against another co-tenant. And he cited to only the cases that were on the surface cases, not cases where there had been a taking of the minerals like this. So it is not applicable in this case. There is only one exception in Illinois to this longstanding and still existing rule that one co-tenant can't take the minerals without the consent of the other co-tenants. That exception was created in 1939 by the passage of the Oil and Gas Rights Act. And it was created by this. The statute was created to permit situations where there was not consent from the other party. And they wanted to remove the minerals so they could go to the circuit court, ask for permission, and get permission to do it. And when they did that, they were limited to an accounting. But it's very different from this situation. Because in that case, where you file under the act, you have to give notice to the other co-tenants. You have to give them an opportunity to be heard, to say they're a piece in court, to be represented. And in this situation, Chicago Title is telling this court, oh, we don't have to do that. We don't have to go through the Oil and Gas Rights Act. It's optional. We can do it if we want. That's an absurd argument because if that were the case, you wouldn't need the act. It wouldn't need to be passed. The act didn't need to be passed except for the fact that there was a rule that said you can't take it without the consent of the other co-tenant. Because of that rule, they passed the Oil and Gas Rights Act, which relaxed the rule by giving a person a method or procedure to go in and get permission to remove it. Absent that permission from the court, it's not permitted. And it's still not permitted. And what's interesting, they rely on the pure oil case and the reward oil case. In both of those cases, the plaintiff did what they were supposed to do. They filed under the Oil and Gas Rights Act to get permission and follow the correct procedure. Both of those cases, both pure oil and reward oil, support our argument because they filed under the act, got permission. And in fact, the court in reward oil indicated that they said this. By reason of the statute, the court has the power to authorize the majority owner to drill and remove the oil and gas if the oil and gas is being drained or in imminent danger of being drained. In other words, the only way you get permission or consent without the consent of the co-tenant is by filing under the act. And that was not done here. And there was a very good reason why they didn't do it. You see, the O'Malley's had a plan. And that plan was, if we can remove the gas and oil for seven years, then we can maybe acquire it by adverse possession. My clients lived in Texas, in northern Indiana, had no idea what's going on. In fact, the O'Malley's made an agreement not to tell them, a written agreement not to tell them. And so, if they had filed under the act, they would have had to notify us, which would have ruined their plan to acquire it by adverse possession. In this case, Chicago titles, not asking the court to find that the law in Illinois is that one co-tenant can take it without the consent of the other co-tenant. That's not the law in Illinois. The trial court found correctly it is not the law in Illinois. So, what they're really trying to do, your honors, is to convince you to change the law, to move from being a minority state to being a majority state. And you have the amicus brief of the Oil and Gas Association, which tells you what effect that would have on the oil and gas industry in Illinois. A very bad, negative effect. It's essentially the adoption of every man for himself rule of co-tenancy, which would result in chaos and uncertainty in the oil and gas industry, which we certainly don't need at this time. The ridiculousness of this argument by CTIC is noted by the association. For example, if I own 1% as a co-tenant, under the theory espoused by the Chicago title, I could just go in and start taking it and removing it from the ground and selling it and not give any money to my co-tenants. And all the other co-tenants could do the same. And what you get is chaos and you get fights and lawsuits. It just makes no sense. When you have in place an Oil and Gas Rights Act that makes for the orderly process of dealing with co-tenants and getting their permission or getting the court's permission. All the aspects of the trial court's orders at issue here were legally and factually correct. There is no basis for reversing them. The only error that could be assigned to the trial court in this case is the granting of the Rule 308 request. That decision was incorrect because there is no question of law involved here as to which there is a substantial ground for difference of opinion. And none was identified by the trial court. So this court, before today, was correct in denying that. I was going to ask you about that. It seems to me that the trial court answered these questions in the summary judgment orders. Absolutely. She answered every one of them and answered them correctly, according to the law. It was perfectly clear and there was no identification of any opposing or different opinion. It was clear that that is the law in Illinois. And so the orders were detailed and correct, factually and legally. Let me ask you, how do you get the punitive damages in this case? I'm sorry, Judge. How do you justify the punitive damage claim? Well, when you look at the death law case, when you look at each of the cases, and let me just say this very quickly. This issue about the method of damages and whether you can deduct the costs and whether there are punitive damages are not included in the certified questions. That was not decided by the court. And so that process of going through that is clear in each of the cases. When you take the death law case, it talks about good faith and bad faith. It says that if you have it here, it says good faith trespassers can deduct the costs from the amount to be paid when determining accounting damages. But if you're willful, if you're in bad faith, in other words, if you know that the other party is there and owns it, then you cannot deduct. And there are several cases we've cited for that principle. And that also goes to the issue of punitive damages, which are permitted in cases where it is willful or in bad faith, which is the case here. In other words, in our case, the O'Malleys knew all that time that we owned half of it. They knew that what Chicago title was saying was untrue. They took it anyway. They made agreements not to tell us so they could eventually acquire by adverse possession, but they were unsuccessful ultimately. So in that case where you're a willful or bad faith actor, the cases do permit you to not deduct the costs and also to acquire punitive damages, which have which the trial courts already dealt with, but is not part of the of the question presented to this court in the 308 appeal. OK, thank you very much, Mr. Cox. Thank you, Judge. Mr. Cushing, your response. I'm sorry. Before I go on, Justice Welch, do you have any questions? No questions. Justice McCain. No questions. All right. Now, Mr. Cushing. Thank you, Your Honor. I do have a response. And I'm going to start with the Detlof case. Detlof involved a willful trespasser involving coal. Willful trespasser. The Illinois Supreme Court said no punitive damages. Getting the value of the minerals without deduction of costs was all that the mineral rights holder was entitled to. And I listened to Mr. Cox, and I listened to his argument, which was argument without authority. And I want to remind this court about the Fife case. The Fife case was at the Illinois Supreme Court first, and it was determined at the Illinois Supreme Court level that a lease signed by less than all of the co-tenants was for the benefit of all. And the appellate court then decided to allow the deduction of costs from the accounting, which was the first time that happened. So when you say that we don't have any cases to back us up, you have to absolutely ignore those two cases. You have to ignore the pure oil case. And as a matter of fact, I think in order to find the way Mr. Cox asked you to find, you have to find that there is a tort case applicable to a co-tenant mining gas that owns 50% or more of the mineral rights. Because that's our first two questions. It's not a 1% owner. It's a 50% owner. You also must find that the co-tenant that did not mine gas owned it. So you have to find that they own the gas. He didn't cite any authority for that, but he wants you to find that. You must also find that the co-tenant should be treated worse, the mining co-tenant, than a willful trespasser. Again, citing to the debt loss case. And finally, you must find that the Fife case is no longer applicable law, and Illinois does not follow the majority of jurisdictions. Mr. Cox told you that Illinois was in the minority. What he didn't tell you is the case that backs that up, because there is no such case. He talked about what the trial court found, and I understand Justice Case, you asked him about that. But remember, your decisions today are based upon a de novo review. And whatever the trial court found is not binding on this court. And I submit to you that in order to find the way that Adams and Luby want you to find, you have to overrule the Conklin case that talked about co-tenants cannot trespass. The rule about whether it's surface or below the surface that Mr. Cox talks about doesn't exist in any case law. It's just a figment of his thought process. You have to overrule the debt loss case and say you can get punitive damages and the value of the minerals. You have to overrule the pure oil case, the rule wall cases, and both Fife cases. I don't think this court wants to do that. I think there is a dispute as to what the law is, but it will not result in chaos to find that a 50% co-tenant has the right to mine, especially when that co-tenant owns the surface rights. And that the remedy for the co-tenant that doesn't approve the mining is to get an accounting, whether by common law or under the act. And that's what we're here for, judges or justices, is to have that finding upheld by this court based upon all the precedent that we cited to you. I'd like to argue, everybody likes to argue, but I think this court is compelled to follow the existing case law, and that lays out a roadmap that leads to what we believe is the inescapable conclusion. Adams and Luby are entitled to an accounting, and their accounting should be done after deduction of costs of mining, and that's what they're entitled to as their sole remedy in this case. Thank you. Mr. Cushing, the Fife case in the appellate court says that in cases of a willful trespasser, the rule seems to be well settled, that the plaintiff is entitled to recover in a suit for an accounting the value of the mineral without deducting any expenses incurred in mining. How do you explain that? That's a willful trespasser, Your Honor, but the way I explain it is we have the Conklin case that says a co-tenant can't be a trespasser. We also have that same case that cited to the McKinney case, the Fife case, and said we're not going to treat a co-tenant as a willful trespasser. So I agree with the rule for a willful trespasser is you get the value of the minerals gross without netting costs. But both the Fife case, the McKinney case, the Conklin case all say a co-tenant cannot be a trespasser. Easy to reconcile, Your Honor. Okay. Justice Welch, any questions? No questions. Mr. McKinney? No questions. All right. Thank you all for your arguments here today. This matter will be taken under advisement and we will issue an order in due course.